BEFORE THE
UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE AMERICAN HFC COALITION, ARKEMA INC., THE CHEMOURS COMPANY FC, LLC, HONEYWELL INTERNATIONAL INC., MEXICHEM FLUOR, INC. <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*. | Court No. 24-00071 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, the American HFC Coalition and its individual members, Arkema, Inc., The Chemours Company FC, LLC, Honeywell International Inc., and Mexichem Fluor Inc. ("Plaintiffs" or "the Coalition"), by and through their attorneys, allege herein as follows.

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. The Coalition contests certain aspects of the U.S. Department of Commerce's ("Commerce") final results of administrative review of the antidumping duty order on hydrofluorocarbon ("HFC") blends from the People's Republic of China, published in the *Federal Register* on March 8, 2024. *See Hydrofluorocarbon Blends From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 16724 (Mar. 8, 2024) ("*Final Results*") and accompanying Issues and Decision Memorandum ("*Final IDM*"); *Hydrofluorocarbon Blends from the People's Republic of China: Amended Final*

*Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 25566 (Apr. 11, 2024) ("*Amended Final Results*").

## JURISDICTION

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(c) because this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(iii).

3. Alternatively, this court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(i) because this case arises from a determination made by the United States concerning "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).

## TIMELINESS OF ACTION

4. Commerce published its *Final Results* in the *Federal Register* on March 8, 2024. Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i), the Coalition commenced this action by timely filing a Summons with this Court on April 5, 2024, which is within 30 days after the date the *Final Determination* was published in the *Federal Register*, and is now filing the Complaint within thirty days after filing of the Summons. Accordingly, this action is timely in accordance with 28 U.S.C. § 2636(c) and within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and United States Court of International Trade Rule 3(a)(2).

## STANDING

5. The Coalition is a trade or business association a majority of whose members manufacture, produce or wholesale a domestic like product in the United States. The Coalition was the petitioner in the underlying antidumping duty investigation. The Coalition also requested the administrative review that is subject to this appeal and actively participated in that proceeding. Accordingly, the Coalition is an interested party within the meaning of 19 U.S.C. §

1677(9)(E) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

6. The individual plaintiffs, Arkema, Inc., The Chemours Company FC, LLC, Honeywell International Inc., and Mexichem Fluor, Inc., are domestic manufacturers or wholesalers of the domestic like product, HFC blends, that is covered by the underlying antidumping duty order. The individual plaintiffs were petitioners in the underlying antidumping duty investigation and interested parties in the administrative review that is subject of this appeal. The individual plaintiffs, through the Coalition and on their own behalf, requested the administrative review that is subject to this appeal and actively participated in that proceeding. Accordingly, the individual plaintiffs are interested parties within the meaning of 19 U.S.C. § 1677(9)(C) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## PROCEDURAL HISTORY

7. Commerce published an antidumping duty order covering HFC blends from China in the *Federal Register* on August 19, 2016. *See Hydrofluorocarbon Blends from the People's Republic of China: Antidumping Duty Order*, 81 Fed. Reg. 55436 (Aug. 19, 2016) ("*HFC Blends Order*").

8. In response to requests for an administrative review of the *HFC Blends Order* by the HFC Coalition, "its individual members," and Zhejiang Sanmei Chemical Ind. Co., Ltd. ("Sanmei"), Commerce initiated an administrative review on October 11, 2022. *See Initiation of Antidumping and Countervailing Duty Administrative Review*, 87 Fed. Reg. 61278 (Oct. 11, 2022).

9. Because China is considered a non-market economy ("NME") in the context of antidumping duty proceedings, it was necessary for Commerce to select an appropriate surrogate market economy to value the factors of production. On February 25, 2023, Commerce placed on the record a "non-exhaustive list of countries that Commerce has determined, based on per capita

Gross National Income ('GNI'), is at the same level of economic development as China." *See* Commerce Memorandum, "Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information" (Feb. 24, 2023). Attached to this invitation to comment was another memorandum identifying six countries that Commerce considered to be at "the same" level of economic development as China. *See* Commerce Memorandum, "List of Surrogate Countries for Antidumping Investigations and Reviews from the People's Republic of China" (Aug. 19, 2022) ("GNI List"). Commerce provided "interested parties an opportunity to comment on the list as a starting point for surrogate country selection…and to propose for consideration other countries that are at a level of economic development comparable to China." *Id.*

10. On March 3, 2023, the Coalition submitted comments on Commerce's GNI List and factual evidence showing that Mexico was comparable to China in terms of per-capita GNI. *See* Letter from HFC Coalition, "Comments on Surrogate Country List" (Mar. 3, 2023). Therefore, the HFC Coalition requested that Commerce "include Mexico as a potential surrogate country, primary surrogate, and source of representative financial ratios in this review." *Id.*

11. March 13, 2023, the Coalition submitted comments and evidence concerning the selection of a primary surrogate country. *See* Letter from HFC Coalition, "Comments on Surrogate Country Selection" (Mar. 13, 2023). Therein, the Coalition submitted evidence that HFC blends and other fluorocarbon refrigerant gases were not produced in any of the six countries identified on the Commerce GNI list. The Coalition also submitted evidence that HFC blends and other refrigerants were produced in Mexico during the period of review. *See id.*

12. On August 1, 2023, the Coalition submitted comments and additional evidence in advance of the preliminary determination again demonstrating that Mexico was economically

comparable to China and the only potential surrogate country that produced HFC blends or comparable fluorocarbon refrigerant gases. *See* Letter from HFC Coalition, "Petitioners' Pre-Preliminary Comments and Submission of Surrogate Values" (Aug. 1, 2023).

13. On September 6, 2023, Commerce published the preliminary results and preliminarily selected Romania as the primary surrogate country. *See Hydrofluorocarbon Blends From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022,* 88 Fed. Reg. 60926 (Sept. 6, 2023) ("*Preliminary Results*") and accompany Decision Memorandum ("*PDM*"). Commerce found that Romania, Malaysia and Turkey "exported comparable merchandise during the POR." PDM at 6-7. Commerce next noted that Mexico was not "on the surrogate country list" and therefore would "only select Mexico as the primary surrogate country if data from Romania, Malaysia, and Turkey were unsuitable." *Id.* at 7. Commerce then concluded that "because complete SV information is available from Romania and the Romanian financial statements are more reliable because they are from a producer of comparable merchandise and do not contain evidence of subsidies Commerce has previously found countervailable, Commerce preliminarily determines that the Romanian data are the best available SV data" and selected Romania as the primary surrogate. *Id.*

14. On October 20, 2023, the HFC Coalition filed a case brief and argued, again, that record evidence demonstrated that none of the GNI List countries produced HFC blends or other fluorocarbon chemicals or their unique and unusual inputs. *See* Letter from HFC Coalition, "Case Brief of the HFC Coalition" (Oct. 20, 2023). The Coalition again argued that, in contrast to the GNI List countries, Mexico was economically comparable to China and a significant producer of identical merchandise. *See Id.*

15. Following the filing of briefs by the Coalition and Sanmei, Commerce issued the final determination and *Final IDM* contested in this action. Commerce again found "no basis for selecting Mexico" as the surrogate country and instead selected Romania, one of the countries identified on the GNI List. *Final IDM* at Comment 1.

16. On April 11, 2024, Commerce published amended final results to account for certain ministerial errors. *See Amended Final Results*.

## **CLAIMS**

### Count 1

17. Paragraphs 1 through 16 of this Complaint are incorporated herein by reference.

18. Insofar as Commerce found that Mexico, as compared to other GNI list countries, was not at "the same" level of economic development as China for purposes of 19 U.S.C. § 1677b(c)(4)(A), its determination was not supported by substantial evidence on the administrative record nor in accordance with law.

### Count 2

19. Paragraphs 1 through 18 of this Complaint are incorporated herein by reference.

20. Commerce found that certain GNI List countries were "significant producers" of "comparable merchandise" for purposes of 19 U.S.C. § 1677b(c)(4)(B). The only record evidence cited by Commerce consisted of export statistics showing that certain GNI List countries exported HFC blends or other fluorocarbon refrigerant gases during the period of review. *Final IDM* at 9. There was otherwise no direct evidence of actual production of HFC blends or other fluorocarbon refrigerant gases in any of the GNI List countries.

21. The legislative history indicates that the existence of "net" exports may support an inference that the products were produced in the exporting country. *Final IDM* at 8-9. The record

evidence showed that each of the GNI List countries exporting HFC blends or other fluorocarbon refrigerant gases were net importers, not net exporters.

22. The record otherwise included an independent market research report indicating that HFC blends and other fluorocarbon refrigerant gases were not produced in any of the GNI List countries. In addition, evidence including U.S. government agency reports established that the essential raw material needed for the production of HFC blends or other fluorocarbon refrigerant gases was not mined or processed in any country on GNI List.

23. Commerce's reliance on an inference that certain GNI List countries were significant producers of comparable merchandise for purposes of 19 U.S.C. § 1677b(c)(4)(B) was not supported by substantial evidence in the administrative record.

<u>Count 3</u>

24. Paragraphs 1 through 23 of this Complaint are incorporated herein by reference.

25. Insofar as Commerce found that Mexico, as compared to other GNI List countries, was not at a "comparable" level of economic development as China for purposes of 19 U.S.C. § 1677b(c)(4)(A), its determination was not supported by substantial evidence on the administrative record nor in accordance with law.

<u>Count 4</u>

26. Paragraphs 1 through 25 of this Complaint are incorporated herein by reference.

27. To identify the primary surrogate country for China, Commerce has adopted a "Sequencing Procedure," explained in Policy Bulletin 04.1, that generally calls for the analysis of economic comparability before it considers merchandise comparability. *See Final IDM* at 5-6. However, there is an exception to this "standard" sequencing procedure for merchandise that is "unique or unusual" within the meaning of Policy Bulletin 04.1. *See Final IDM* at 10.

28. The administrative record showed that the chemical composition of HFC blends and other fluorocarbon refrigerant gases required the presence of fluorine, which was imparted to the finished merchandise through the use of fluorspar or hydrogen fluoride as a raw material in the production process. The record also established that the presence of fluorine and the form of the finished product, a gas, was essential to the end-use of the merchandise. No contrary evidence was submitted on the record.

29. Commerce's finding that "the record evidence does not support the claim fluorocarbons are unusual or unique" (*Final IDM* at 11) was not supported by substantial record evidence.

30. Commerce's finding that "the record evidence does not support the claim fluorocarbons are unusual or unique" (*Final IDM* at 11) was not consistent with the statute or administrative and judicial precedent, and therefore was not in accordance with law.

Count 5

31. Paragraphs 1 through 30 of this Complaint are incorporated herein by reference.

32. Separate from the issue whether Mexico should have been selected as the primary surrogate for China, the record included affirmative, undisputed evidence that Mexico was a significant producer of HFC blends. No inference was required to support this conclusion and neither Commerce nor respondents disputed that fact. This evidence included the 2021 financial statement of CYDSA, S.A. de C.V., a Mexican chemical producer operating a joint venture with Honeywell International Inc. to produce HFCs.

33. Despite that CYDSA's joint venture produced HFCs, which is the identical merchandise produced by Sanmei and covered by the antidumping duty order, Commerce relied upon the financial statement of a Romanian producer of various chemicals, none of which contain

fluorine. *Final IDM* at 13-18. This determination was not supported by substantial evidence and otherwise inconsistent with the statute, regulations, and administrative and judicial precedent.

## REQUEST FOR JUDGMENT AND RELIEF

WHEREFORE, the Coalition respectfully requests that this Court:

34. Hold that Commerce's *Final Determination* was not supported by substantial evidence or in accordance with law;

35. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

36. Grant such further relief as this Court deems just and proper.

Dated:  May 6, 2024                                                       Respectfully submitted,

/s/ James R. Cannon, Jr.

James R. Cannon, Jr.
Chase J. Dunn
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone: (202) 567-2300
Email: jcannon@cassidylevy.com
*Counsel to the American HFC Coalition and its individual members*